UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:09CV00062-T23TBM

WESTCHESTER FIRE INSURANCE
COMPANY, a New York corporation,

       Plaintiff,

vs.

CITY OF BROOKSVILLE,

       Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Plaintiff Westchester Fire Insurance Company ("Westchester") responds to the Defendant's Motion to Dismiss and Supporting Memorandum of Law (the "Motion"), and states as follows:

### INTRODUCTION

Similar to a situation playing itself out all across the country, this case involves a development in the City of Brooksville (the "City") that fell prey to the downturn in the nation's housing market. Unlike many such developments in which neighborhoods have been left with half-completed, abandoned construction sites, however, in this case the development never progressed beyond the permit and plat approval stage. Construction never began, and the property remains undeveloped wooded acreage. Because the developer of the property did not build the homes

1

it had intended to build, it did not trigger its obligation to install the public works that were required by the City as a condition of permit and plat approval. Likewise, the developer's surety, Westchester, did not incur any obligations under the Performance Bonds obtained by the developer to secure completion of the public works projects.

Although there are no homes requiring water, sewer, roads, or any other public works at the project site, and although the City has not itself installed these public works before seeking recovery under the Bonds as its own ordinance requires it to do, the City has asserted that it is entitled to a payment of more than $5 million from Westchester. In light of these facts, the salient question is not whether this dispute should be resolved in federal court or state court, but whether the City's position is sufficiently colorable to be in any court at all. Nonetheless, as a result of the City's continued unfounded insistence that Westchester is liable under the Bonds, a court determination of Westchester's obligation is necessary. Accordingly, Westchester filed this declaratory judgment action seeking a determination of its rights and obligations under the Bonds.

Neither of the City's arguments for dismissing this declaratory judgment action have any merit. The City first attacks the adequacy of the Complaint's pleading of subject matter jurisdiction. Yet the Complaint properly recites that subject matter jurisdiction exists and also recites the necessary (and truthful) supporting facts, that Westchester is incorporated in New York and maintains its

2

principal place of business in that state. The City's attack, made without a scintilla of evidence, fails to raise a factual challenge adequate to contest the existence of jurisdiction.

In its follow-up bid to achieve its preferred forum, the City contends that this action should be dismissed based on this Court's discretionary jurisdiction over declaratory judgment actions. In support of this argument, the City fails to identify a single factor supporting such a dismissal under the governing standard set forth by the Eleventh Circuit. Instead, the City resorts to a repeated insistence that the state court is better suited to the resolution of this dispute merely because state law applies. That is not a basis for this Court to decline jurisdiction over this action. Indeed, at the very outset of our constitutional democracy, access to federal courts in diversity cases was established for the very reasons the City seeks to ignore.

## STATEMENT OF FACTS

As set forth in the Complaint, this dispute arises from a canceled single-family residential development project in the City of Brooksville, Hernando County, Florida. On or about January 23, 2006, Levitt and Sons of Hernando County, LLC (the "Developer") obtained a final plat approval (the "Plat") for an intended development project known as Cascades at Southern Hills, Phase II (the "Project").[1] As a condition of the City's final approval of the Plat, the Developer was required to

---

[1] The Developer also separately obtained plat approval for a different project, Phase I, involving a separate piece of property and secured by a different Bond.

complete certain on-site improvements, including storm lines, water lines, reclaimed lines, sanitary sewer lines, earthwork and roadways (the "public works projects").

As required by the City pursuant to City Ordinance Section 129-3(c)2, the Developer caused Westchester (as surety) to issue two performance bonds to provide security for the Developer's completion of the public works projects. Westchester issued the first, Bond No. K07314541 in the sum of $2,109,761.75, on behalf of the Developer (Principal), in favor of the City (Obligee), in connection with the Project's storm, water, reclaimed and sanitary sewer lines. A copy of Bond No. K07314541 is attached as Exhibit A to the Complaint. In addition, Westchester issued Bond No. K0731453A in the sum of $3,256,693.00, on behalf of the Developer (Principal), in favor of the City (Obligee), in connection with the Project's general conditions, roadwork and earthwork. A copy of Bond No. K0731453A is attached as Exhibit B to the Complaint. Bond No. K07314541 and Bond No. K0731453A, with a collective total value of $5,366,454.70, are hereinafter collectively referred to as the "Bonds."

Before commencing construction of the Project, and before a single unit was sold, the Developer filed a bankruptcy petition in the U.S. Bankruptcy Court, Southern District of Florida, pursuant to 11 U.S.C. §§ 1107(a) and 1108. On November 30, 2007, the Bankruptcy Court granted the Developer authority to abandon the Property to the mortgagee, Key Bank (the "Bank").

4

Bizarrely, even though no homes have been built or will be built at the Project pursuant to the project approvals or the Plat, on or about December 13, 2007, the City made written demands for payment from Westchester on the Bonds. Copies of the City's demands are attached as Exhibit C to the Complaint. Shortly thereafter, on or about February 22, 2008, the City sued Westchester to foreclose the Bonds in the Circuit Court of the Fifth Judicial Circuit, in and for Hernando County, Florida, in the matter styled *City of Brooksville v. Westchester Fire Insurance Company*, Case No. H27CA2008000614. The City did not name any defendants other than Westchester in its suit.[2]

Shortly after the filing of the City's removable complaint, Westchester and the City entered into a Forbearance Agreement, pursuant to which the City voluntarily dismissed its lawsuit without prejudice for a period of one year, with the right of termination by either party with 60 days written notice. The Forbearance Agreement included a provision providing for federal jurisdiction over disputes:

> "[a]ny action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties only in the County or Circuit Court in and for Hernando County, Florida *or* U.S. District Court for the Middle District

---

[2]The City's demand for payment was (and is) deficient, not only because the Project was not constructed and therefore the obligation to pay under the Bonds was not triggered, but also because pursuant to the City's own ordinance, the City is obligated to construct the public works projects *before* making a demand for payment. City Ordinance Section 129-3(c)(2). The City is not entitled to $5.3 million in cash to use for its own purposes. Of course, no one would actually construct these improvements in this market, only to age and deteriorate with no buyers existing in the foreseeable future.

> of Florida, Tampa Division, Hillsborough County, Florida and each of
> the parties irrevocably consents to the jurisdiction of such court (and
> of the appropriate appellate courts) in any such action or proceeding."

Forbearance Agreement, Paragraph 5, emphasis added (attached as Exhibit E to the Motion). The purpose of the Forbearance Agreement was to allow time for the potential that as part of the pending bankruptcy proceeding, a new developer would acquire the Project and would commence construction of the homes and public works projects.

On November 17, 2008, the City notified Westchester of its termination of the Forbearance Agreement, effective January 16, 2009. In order to obtain a prompt determination that it has no obligations under the Bonds, Westchester immediately filed the instant declaratory judgment action on January 16, 2009.

The City asserts in its Motion that on February 9, 2009, the City instituted a new state court action. On information and belief, Westchester has not been served with this complaint. (When it is served, Westchester will file a motion to stay or dismiss).

On the same day, the City filed its Motion to Dismiss, asserting that Westchester failed to adequately plead the existence of subject matter jurisdiction and that the Court should exercise its discretion to dismiss the suit in favor of the City's state court suit.

6

**ARGUMENT**

I.   **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE ACTION.**

As set forth in the Complaint, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute.

The City concedes that the amount in controversy is in excess of $75,000, that the City is a citizen of the State of Florida, and that diversity exists if Westchester is a citizen of any state other than Florida. Motion at 7-8. The City's only stated concern is that "Plaintiff's complaint simply provides a blanket assertion that its principal place of business is in New York without setting forth any specific facts in support of that conclusion." *Id.* at 9. This challenge is legally and factually unavailing.

As this Court is no doubt aware, the Federal Rules of Civil Procedure call for notice pleading, and a litigant need only provide "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). The City's attack is a facial challenge only. The City's assertion is that the Complaint provides merely a "blanket assertion" of Westchester's principal of place of business. Yet this is all that is required; Westchester adequately pled the existence of federal jurisdiction and the necessary supporting facts (namely, that Westchester is incorporated in New York and that its principal place of business is in New York).

Perhaps recognizing the adequacy of Westchester's pleading, the City attempts to characterize its objection as a "factual challenge." The City correctly

7

observes that in the face of a factual challenge, the plaintiff must offer evidence beyond mere pleading to substantiate the existence of subject matter jurisdiction. However, the City cannot create a factual challenge just by assigning this label to its attack. A "factual attack on a complaint challenges the existence of subject matter jurisdiction *using material extrinsic from the pleadings, such as affidavits or testimony*." *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) (emphasis added). Here, the City has not alleged, much less provided extrinsic evidence of, any fact sufficient to raise a question as to Westchester's citizenship. Accordingly, the City has not made a factual challenge and the Complaint's well-pled allegations must be accepted as true.

In any event, extrinsic evidence of Westchester's status as a citizen of New York and the existence of federal jurisdiction are well established in the very documents the City has attached to its Motion.[3/] First and foremost, the Bonds upon which the City's demands are based themselves establish that Westchester is both incorporated in, and has its principal place of business in, the State of New York. Both Bonds, in their initial paragraphs, recite that Westchester Fire Insurance Company is "a corporation certified to do business in the State of Florida as a surety

---

[3/]If the Court determines that the City has raised an adequate factual challenge and that the documents already before the Court are inadequate to substantiate the existence of subject matter jurisdiction, Westchester respectfully requests that it be given a hearing and the opportunity to provide further evidence in support of its place of citizenship, as it is entitled to do. *See, e.g., Rance v. D.R. Horton, Inc.*, 2008 WL 3864285, at *2 (11th Cir. 2008).

8

insurer and duly organized under the laws of the State of New York, with its Home Office located at 140 Broadway, New York, NY, 10005." Mot. Exs. A and C.

Indeed, the City already has recognized that diversity jurisdiction exists between these parties. In the Forbearance Agreement, the City agreed that disputes arising under the Agreement may be brought in the state court *or* in the "U.S. District Court for the Middle District of Florida, Tampa Division, Hillsborough County, Florida and each of the parties irrevocably consents to the jurisdiction of such court . . . in any such action or proceeding." Mot. Ex. E. In the face of this provision, and given that the federal jurisdiction identified therein necessarily constituted diversity and not federal question jurisdiction, the City's newfound concern about the existence of federal jurisdiction is rather disingenuous.

To the extent that there is any lingering doubt, the location of Westchester's principal place of business in New York also is established by the company's public filings with the State of Florida. Westchester's 2008 Annual Report, available online from the Florida Department of State Division of Corporations, expressly lists the corporation's "Principal Place of Business" in New York, New York. *See* Ex. A. Similarly, the Florida Office of Insurance Regulation (FOIR) reports that Westchester's home office is located in New York. It also recites that other of Westchester's functions (including administration, policy holder relations, and records) are located in Philadelphia, Pennsylvania. There is *no* reference to any

9

office in the State of Florida, much less the company's principal place of business.[4]
*See* Ex. B.

Westchester, a New York corporation, has adequately pled the existence of diversity jurisdiction, and there is no basis for dismissal.

## II.   THIS CASE IS PROPERLY BEFORE THIS COURT UNDER THE DECLARATORY JUDGMENT ACT.

The City's contention that the Court should exercise discretion to dismiss the case under the Declaratory Judgment Act is no more persuasive than the City's unavailing challenge to jurisdiction. At core, the substance of the City's argument is that it would rather enjoy the home court advantage of litigation against an out-of-state insurer in state court. This is simply not a basis for dismissing a valid declaratory judgment action. To the contrary, diversity jurisdiction is "particularly designed to avoid local bias and prejudice" and is "grounded in large measure on this very principle." *Calhoun v. United States*, 384 F.2d 180, 185 (5th Cir. 1967). Moreover, to the extent that the Court exercised its discretion to dismiss this declaratory judgment action, Westchester would simply remove the state court lawsuit that was subsequently filed against it by the City. Thus dismissal would be a pointless exercise, serving only to delay resolution of the dispute to Westchester's detriment.

––––––––––––––––––––

[4]The City's familiarity with the information reported by FOIR is established in its Motion, in which it recites that Westchester has been licensed with FOIR since June 21, 1920. The information about Westchester's citizenship is set forth on the same website screen as Westchester's date of initial licensure.

As set forth below, not a single one of the nine factors set forth in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2008) suggests that dismissal of this action is warranted. "There must be well-founded reasons for declining to entertain a declaratory judgment action." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004). No such well-founded reasons exist. Accordingly, this Court should exercise its discretion to maintain this suit.

### 1.     The State Has No Interest In Resolution Of This Case in State Court Rather Than Federal Court.

The City's suggestion that this Court is somehow ill-equipped to decide this case, merely because it turns on questions of state law, is without foundation.

The City has not set forth any basis for its conclusion that "a strong public interest exists for the City to pursue its rights to the Project Improvements against all parties to the Project in state court" as opposed to federal court. No such reason exists. This Court is perfectly capable of applying the governing state law to determine whether Westchester's obligations under the Bonds have been triggered, and if so, whether the City has performed the conditions precedent to its demands for payment. "Since state law supplies the rule of decision in all diversity cases, federal courts are equally capable of applying state law." *National Council on Compensation Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 178 (D.Ct. 2003); *see also American Nat'l Prop. and Cas. Co. v. Weese*, 863 F. Supp. 297, 300 (S.D.V.A. 1994) (internal quotation omitted) ("Even where questions of state law

11

govern all issues of insurance coverage, however, that alone provides no reason for declining to exercise federal jurisdiction.").

The City conclusorily asserts that "each development project is a piece of a bigger puzzle in the overall growth and planning of essential City Services" and that the City takes actions and approvals on other projects in reliance on existing development agreements for public works improvements.   Motion at 11-12. Conspicuously absent from this discussion is any allegation that the City made a single planning decision in reliance on *this* project, or that the Developer's failure to commence construction on this private parcel of land has had any effect whatsoever on the City's planning or operations.   In any event, this Court is perfectly capable of reviewing any such evidence and determining its relevance, if any, to the City's entitlement to receive more than $5 million for public works projects it has not built.

> **2.    This Declaratory Judgment Action Would Settle The Controversy Among All Parties.**

The City makes the argument that "City residents and residents in the City's service area have been denied the public works Project Improvements due to the Developer's default, therefore, the City has a vested interested (sic) in pursuing its rights to the Project Improvements against all parties to the Project, including the Developer, the Surety, and the successor in title to the Project."   Motion at 14.[5]

_____

[5]As an aside, the City's suggestion that City residents have been denied valuable public works projects to which they are entitled is simply ridiculous.  The public works in question were to have serviced homes that do not exist, are not to be constructed, have not been sold, and are not on the market.  These roads and

This is a manufactured argument designed to thwart Westchester's forum choice. The City's sudden insistence that the Developer and the successor in title to the Project (the Bank) are necessary parties is belied entirely by the fact that *the City did not name either of these entities in its own lawsuit.* When it filed suit in February 2008 against Westchester, the only defendant that the City named was Westchester. The City's own election of defendant in this lawsuit, which was based on the identical facts at issue here and which sought resolution of the identical dispute, constitutes irrefutable evidence that neither the Developer nor the Bank are in any way necessary to the resolution of this dispute.[6]

As the City correctly concluded when it omitted these parties from its own lawsuit, neither the Developer nor the Bank are necessary or even appropriate parties to this litigation. The entire purpose behind the requirement to obtain performance bonds to secure public works obligations is to transfer the covered

---

sewers would service wooded land, and would not benefit any City residents (to the contrary, they would either saddle existing City residents with significant maintenance and upkeep for the unused infrastructure, or they would quickly deteriorate due to lack of upkeep and lack of use). This is not a situation in which a Developer has abandoned a project midstream, leaving residents high and dry.

[6]Westchester has not been served with a copy of the City's new state court suit, which the City alleges it filed on the same day as the instant Motion to Dismiss. Accordingly, Westchester does not know who the City named in that suit. Given the timing, however, any attempt by the City to strengthen its position in this suit by naming additional parties in the state court suit would constitute a transparent and impermissible litigation tactic. The City's initial lawsuit constitutes the best evidence of who the City considers to be necessary parties to the litigation.

obligation to the surety (in this case Westchester) in the event of a developer's alleged default.

The presence of all necessary parties distinguishes this case from each of those cited by the City, in which the court elected to dismiss a declaratory judgment action in large part because of the absence of a necessary party. *See Ameritas*, 411 F.3d at 1331 ("First, the district court found that while it had before it only an incomplete set of parties and claims, the state court action encompassed the complete controversy"); *Clark Constr. Group, LLC v. Travelers Excess & Surplus Lines Co.*, 470 F. Supp. 2d 1350, 1352 (M.D. Fla. 2006) ("parties dispute whether all necessary parties can be brought before the Court"); *General Star Indem. Co. v. Puckit, L.C.*, 818 F. Supp. 1526, 1532 (M.D. Fla. 1993) ("Therefore, the state court action will allow for a determination of the claims of all parties in interest."); *Sunrise Senior Living, Inc. v. APB, Inc.*, 2006 WL 2852853, at *2 (S.D. Fla. 2006) ("The res judicata implication of any fact findings made in this court would be questionable, . . . where . . . an interested party . . . is not made party to suit.").

### 3.   The Federal Declaratory Action Would Serve A Useful Purpose In Clarifying The Legal Relations At Issue.

This factor, which the City ignores, also compels a finding that this action should be maintained.  The nature of the dispute between the parties is clearly defined and ripe for resolution.  This Court's determination of whether Westchester is liable to pay on the Bonds would completely and finally determine the dispute, providing much needed guidance both to Westchester and the City.  As in *Saye v.*

14

*Old Hill Partners*, 478 F. Supp. 2d 248 (D. Ct. 2007), there is "little benefit in delaying these claims for a later time. It does not appear that the parties' relative positions or contentions will change, and . . . withholding a decision now will only allow for the same or similar issues to rise again in the future. As noted above, this case is fit for a judicial decision." *Id.* at 259-260.

### 4.    This Action Does Not Constitute Procedural Fencing, And The Case Is Otherwise Removable.

As set forth above, the City elected to terminate the Forbearance Agreement and provided Westchester with the obligatory 60 day notice of termination. Upon the expiration of that time period, and with a legitimate interest in a prompt determination of whether it is liable to pay the City over $5 million under the Bonds, Westchester filed the instant action.[7]

While it is true that Westchester's preference is to litigate in federal court (a preference which is entirely legitimate given the City's clear home court advantage, which is the very basis for the creation of diversity jurisdiction), it is not accurate to characterize Westchester's choice of that forum as nefarious or otherwise improper. These very parties previously entered into a written Forbearance Agreement, in the course of seeking to resolve their dispute, which provided that actions or proceedings arising out of or under the Forbearance Agreement could be brought

---

[7]Especially in the current economic climate, Westchester has a substantial interest in foreclosing the City's demand for payment under the Bonds at the earliest opportunity.

*either* in state court or in federal court - specifically the U.S. District Court for the Middle District of Florida, Tampa Division, Hillsborough County, Florida.

Although the instant suit does not directly arise under the Forbearance Agreement, the parties' acceptance of this very federal forum to resolve disputes between them strongly undercuts the City's suggestion that Westchester's choice of a federal forum was done with the intent to thwart the City's known preferences. To the contrary, Westchester appropriately viewed the City's acceptance of this Court as a forum for dispute resolution as tacit approval for its use in resolving the instant dispute.

Moreover, because Westchester can (and would) remove the state court lawsuit filed by the City, the "procedural fencing" factor is inapplicable. In the cases cited by the City, the declaratory judgment plaintiff would not have been able to remove the pending or potential state court lawsuit in which it was a defendant. *See Clark*, 470 F. Supp. 2d at 1352; *General Star*, 818 F. Supp. at 1533 (M.D. Fla. 1993); *Sunrise*, 2006 WL 2852853, at *3. Here, in contrast, this is not an attempt at "backdoor removal." Westchester could remove the state court suit, which would put the parties right back before this Court. Thus, dismissal of this action would serve no purpose other than delay.

This case is strikingly similar to *Continental Ins. Co. v. Carib Link, S.A.*, 2007 WL 1173074 (S.D. Fla. 2007). In *Continental*, a ship owner sued its insurance carrier for damage to the ship in state court. After several months of litigation, the

parties entered into a joint stipulation for dismissal and agreed to allow time for the insurer to further review the coverage demand. Several months later, the insurer sent the company a written coverage position letter, and simultaneously filed a declaratory judgment action in federal court. The company then filed a motion to dismiss and a state court lawsuit on the same day, just as the City did here. In the state court suit, the company added a defendant who was not a party to its initial lawsuit. *Id.*

The court evaluated these facts under the *Ameritas* standard, and concluded that the motion to dismiss should be denied. *Id.* at \*5. Among other factors, the court considered, and rejected, the company's charge that the insurer had raced to the courthouse in an effort to deny the company the right to file in state court. The court reasoned that given the prior lawsuit filed by the company, the insurer had no way to predict that the company would add an additional defendant; to the contrary, the insurer had reason to believe it would have been able to remove the case to federal court if the company had filed first. *Id.* at \*4. The court concluded that the joint stipulation did not preclude the insurer from filing first upon expiration of the agreed period, and that there was nothing improper about the insurer's decision to file a federal declaratory judgment action immediately upon such time as the efforts to resolve the dispute had failed. *Id.* at \*2.

17

**5.    This Case Does Not Encroach On Or Otherwise Damage State Interests.**

The City argues, without explanation, that there is "a useful purpose in having the rights of parties clarified in state court." Motion at 15-16. While it is true that there is a useful purpose in having the rights of the parties clarified, there is no reason whatsoever why it is more useful for the state court to be the one that perform the clarification. As discussed further above, the federal court is perfectly capable of applying state law, and routinely does so in diversity cases. The City's "unsupported, lone assertion that [the state] has a strong interest in having the instant issues decided in state court does not support abstention from this declaratory judgment action." *Gressette v. Sunset Grille, Inc.*, 447 F. Supp. 2d 533, 538 (D.S.C. 2006). And contrary to the argument made by the City, there *is* a useful purpose to proceeding in federal court, namely to ensure that both parties are on equal footing without an unfair home court advantage.

**6.    There Is No Better or More Effective Remedy Than The Instant Action.**

The City's naked statement that "[s]tate court remedies provide for relief that is either similar to, better, or more effective than those available in federal court," Motion at 15, fails to satisfy the City's burden of demonstrating that there are better or more effective remedies than the instant declaratory judgment action. This dispute presents the straightforward question of whether Westchester is liable under

the Bonds.  This declaratory judgment action is well suited towards resolving the dispute entirely.  No other more efficient remedy exists.

### 7. There Are No Underlying Factual Issues Important To An Informed Resolution Of The Case.

This case turns on the legal question of whether Westchester is liable under the Bonds given that the Project was not built and given that the City has not itself constructed the public works before instituting its demands.  As set forth in the Complaint, the Developer did not begin construction on the Project, and the property remains undeveloped wooded land.  The City has improperly attempted to confuse construction on Phase I, an entirely different parcel of land, with construction on the Project (Phase II).  With regard to Phase II, no construction was commenced.

### 8. The State Trial Court Is In No Better Position To Evaluate Factual Issues Than The Federal Court.

As set forth in the preceding section, there are no factual issues that require resolution.  Even if were true that there is a dispute over whether construction commenced on Phase II, this is a simple issue which the Federal Court would be equally able to evaluate.  Both Courts are located in the same area such that the state court has "no geographic advantage over the federal forum with respect to evidence or witnesses." *Continental,* 2007 WL 1173074, at *4.

9.    **There Is No Unusually Close Nexus Between the Underlying Issues and State Law Or Policy**.

This is a diversity case to which state law applies, as in all diversity cases. Beyond that, there is nothing particular about this case that compels resolution in state rather than federal court.

## CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss should be denied. Westchester has adequately pled the existence of subject matter jurisdiction, and this declaratory judgment action is properly maintained.

Respectfully submitted,

By: _____

Eugene E. Stearns
Fla. Bar No.: 0149335
John N. Muratides
Fla. Bar No.: 03326215
Mona E. Markus
Fla. Bar. No. 0153648
STEARNS   WEAVER   MILLER
WEISSLER   ALHADEFF   &
SITTERSON, P.A.
150 West Flagler Street
Miami, Florida 33130
Tel:   (305) 789-3200
Fax:   (305) 789-3395
estearns@swmwas.com
mmarkus@swmwas.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Court using CM/ECF and served via CM/ECF on this __19th__ day of February, 2009.

By: _____
MONA E. MARKUS

Exhibit A

# 2008 FOR PROFIT CORPORATION
# ANNUAL REPORT

**FILED**
## Apr 18, 2008 8:00 am
## Secretary of State
04-18-2008 90032 030 ***150.00

**DOCUMENT # 803463**

**1. Entity Name**
WESTCHESTER FIRE INSURANCE COMPANY

| Principal Place of Business | Mailing Address |
|---|---|
| 1325 AVE OF THE AMERICAS<br>NEW YORK, NY  10019   US | 436 WALNUT ST<br>PHILADELPHIA, PA  19106   US |

4UU71U55

01222008       Chg-P       CR2E034 (12/06)

| 2. Principal Place of Business - No P.O. Box # | 3. Mailing Address | |
|---|---|---|
| Suite, Apt. #, etc. | Suite, Apt. #, etc. | |
| City & State | City & State | |
| Zip | Country | Zip | Country |

**4. FEI Number**  13-5481330   Applied For / Not Applicable

**5. Certificate of Status Desired** ☐   **$8.75** Additional Fee Required

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| CHIEF FINANCIAL OFFICER<br>P O BOX 6200 (32314-6200)<br>200 E. GAINES ST<br>TALLAHASSEE, FL  32399-0000 | Name<br>Street Address (P.O. Box Number is Not Acceptable)<br>City                                    FL   Zip Code |

**8.** The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. I am familiar with, and accept the obligations of registered agent.

SIGNATURE _____
Signature, typed or printed name of registered agent and title if applicable.   (NOTE: Registered Agent signature required when reinstating)   DATE

**FILE NOW!!! FEE IS $150.00**
**After May 1, 2008 Fee will be $550.00**

**9.** Election Campaign Financing Trust Fund Contribution. ☐   **$5.00** May Be Added to Fees

| 10. OFFICERS AND DIRECTORS | | 11. ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 11 | |
|---|---|---|---|
| TITLE **C**<br>NAME **DOWD, BRIAN E**<br>STREET ADDRESS **436 WALNUT ST**<br>CITY-ST-ZIP **PHILADELPHIA, PA  19106** | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change  ☐ Addition |
| TITLE **DSVP**<br>NAME **MCDONNELL, FRANCIS W**<br>STREET ADDRESS **436 WALNUT ST**<br>CITY-ST-ZIP **PHILADELPHIA, PA  19106** | ☐ Delete | TITLE *DSVPCFOT*<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☑ Change  ☑ Addition |
| TITLE **DEVP**<br>NAME **CURCIO, WILLIAM N**<br>STREET ADDRESS **1133 AVE OF THE AMERICAS**<br>CITY-ST-ZIP **NEW YORK, NY  10036** | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change  ☐ Addition |
| TITLE **DP**<br>NAME **CROSBY, DENNIS A JR**<br>STREET ADDRESS **500 COLONIAL CENTER PKWY**<br>CITY-ST-ZIP **ROSWELL, GA  30076** | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change  ☐ Addition |
| TITLE **AS**<br>NAME **GIGANTI, CARMINE A**<br>STREET ADDRESS **436 WALNUT ST**<br>CITY-ST-ZIP **PHILADELPHIA, PA  19106** | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change  ☐ Addition |
| TITLE **DEVP**<br>NAME **LUPICA, JOHN JOSEPH**<br>STREET ADDRESS **436 WALNUT ST**<br>CITY-ST-ZIP **PHILADELPHIA, PA  19106** | ☐ Delete | TITLE<br>NAME<br>STREET ADDRESS<br>CITY-ST-ZIP | ☐ Change  ☐ Addition |

**12.** I hereby certify that the information supplied with this filing does not qualify for the exemptions contained in Chapter 119, Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 10 or Block 11 if changed, or on an attachment with an address, with all other like empowered.

**SIGNATURE:** _____   4/16/08   215.640.2687
SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR   Date   Daytime Phone #

CARMINE A. GIGANTI, ASST. SECRETARY

# Exhibit B

# WESTCHESTER FIRE INSURANCE COMPANY

| FEIN | 13-5481330 |
|---|---|
| Florida Company Code | 01855 |
| NAIC Company Code | 21121 |
| Company Type | PROPERTY AND CASUALTY INSURER |
| Home State | NY |
| Web Site | WWW.ACE.INA.COM |
| Authorization Type | CERTIFICATE OF AUTHORITY |
| Authorization Status | ACTIVE |
| First Licensed in Florida Date | 06/21/1920 |

## Addresses

| Type | Address | Phone |
|---|---|---|
| ADMINISTRATIVE | 436 WALNUT ST, PHILADELPHIA, PA  19106-3703 UNITED STATES | (215) 640-1000 |
| HOME | 1325 AVENUE OF THE AMERICAS, NEW YORK, NY  10019 UNITED STATES | |
| MAILING | 436 WALNUT ST, PHILADELPHIA, PA  19106-3703 UNITED STATES | (215) 640-2391 |
| POLICY HOLDER RELATIONS | MARK WHITER PO BOX 1000, 436 WALNUT ST., PHILADELPHIA, PA  19106 UNITED STATES | (215) 640-4551 |
| LOCATION OF RECORDS | 436 WALNUT STREET, PHILADELPHIA, PA  19106 UNITED STATES | (215) 640-2391 |

## Authorized Lines of Business

| LOB | Type |
|---|---|
| ACCIDENT AND HEALTH | D |
| AIRCRAFT | D |
| ALLIED LINES | D |
| AUTO WARRANTIES | D |
| BOILER AND MACHINERY | D |
| BURGLARY AND THEFT | D |
| COMMERCIAL AUTO PHYSICAL DAMAGE | D |

| | |
|---|---|
| COMMERCIAL AUTOMOBILE LIABILITY | D |
| COMMERCIAL MULTI PERIL | D |
| CREDIT | D |
| EARTHQUAKE | D |
| FARMOWNERS MULTI PERIL | D |
| FIDELITY | D |
| FIRE | D |
| GLASS | D |
| HOME WARRANTIES | D |
| HOMEOWNERS MULTI PERIL | D |
| INDUSTRIAL EXTENDED COVERAGE | D |
| INDUSTRIAL FIRE | D |
| INLAND MARINE | D |
| MEDICAL MALPRACTICE | D |
| MOBILE HOME MULTI PERIL | D |
| MOBILE HOME PHYSICAL DAMAGE | D |
| MULTI PERIL CROP | D |
| OCEAN MARINE | D |
| OTHER LIABILITY | D |
| PPA PHYSICAL DAMAGE | D |
| PRIVATE PASSENGER AUTO LIABILITY | D |
| SERVICE WARRANTIES (NON-AUTO) | D |
| SURETY | D |
| WORKERS COMPENSATION | D |

NEW SEARCH

**DISCLAIMER**

The Florida Office of Insurance Regulation ("Office") provides access to company and other information on this Web site as a public service. Although reasonable efforts have been made to ensure that all electronic information made available is current, complete and accurate, the Office does not warrant or represent that this information is current, complete and accurate. All information is subject to change on a regular basis, without notice.

The Office assumes no responsibility for any errors in the information provided, nor assumes any liability for any damages incurred as a consequence, directly or indirectly, of the use and application of any of the contents of the Office Web site. Unless otherwise noted on an individual document, file, webpage or other Web site item, the Office grants users permission to reproduce and distribute all information available on this website for non-commercial purposes and usage, as long as the contents remain unaltered and as long as it is noted that the contents have been made available by the Florida Office of Insurance Regulation.

Any electronic information or inquiries that the Office receives from a Web site user shall not be considered as, or

treated as, confidential.

The inclusion of, or linking to, other web site URLs does not imply our endorsement of, nor responsibility for, those web sites, but has been done as a convenience to our Web site visitors.



OIR Long Range Program Plan • Contact Us • Mission Statement
Florida Department of Financial Services

200 East Gaines Street, Tallahassee, FL 32399
(850) 413-3140